**COLDWELL BANKER & COMPANY, Plaintiff,**

v.

**Louis J. EYDE, et al., Defendants.**

**No. 85 C 8036.**

United States District Court, N.D. Illinois, E.D.

May 28, 1986.

James A. Hochman, Coldwell, Banker & Co., Chicago, Ill., for plaintiff.

Wm. J. Noble, Sidley & Austin, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

The defendants, Louis and George Eyde, executed a promissory note to pay a brokerage fee allegedly owed the plaintiff, Coldwell, Banker & Co. (Coldwell), in connection with the sale and leaseback of certain Michigan properties. Plaintiff brings this action to enforce the note. The defendants move to quash the summons and dismiss the complaint.

## I. *Motion to Quash*[1]

■ Plaintiff attempted to serve the defendants by first-class mail as provided by Fed.R.Civ.P. 4(c)(2)(C)(ii). Under this rule:

A summons and complaint may be served upon a defendant ... (ii) by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to form 18–A and a return envelope, postage prepaid, addressed to the sender. If no acknowledgement of service is ... received by the sender within 20 days after the date of mailing, service of such summons and complaint shall be made under subparagraph (A) or (B) of this paragraph in the manner prescribed by subdivision (d)(1) or (d)(3) [personal or abode service].

Initially, plaintiff mailed the requisite documents on September 17, 1985. In their affidavits, the defendants state these papers were delivered on or after October 7, 1985.[2] Louis Eyde Affidavit at ¶ 2, George Eyde Affidavit at ¶ 2. They contend this service was ineffective because the acknowledgments were not returnable within twenty days of the original mailing.[3]

The issue is whether service under Rule 4(c)(2)(C)(ii) is effective where it is actually received but cannot be and is not timely acknowledged. The plain requirements of the rule are clear. "If no acknowledgment of service ... is received by the sender within 20 days of the initial mailing, service ... shall be made [personally] in the manner provided [under Rule 4(d)(1) or 4(d)(3) ]." The effectiveness of mail service, thus depends upon an appropriate response by the defendants.[4]

This rule was not adopted through inadvertence. Rather, it represents a considered attempt to reduce the use of the United States marshals as process servers, while maintaining effective, efficient service of civil process. 128 Cong. Rec. H9849–H9850 (daily ed. December 15, 1982) (statement of Rep. Edwards), *reprinted in* 2 J. Moore, *Moore's Federal Practice* ¶ 4.01 [33.–2] (2d ed. 1986). *See generally* Siegel, *Practice Commentary on Amendments to Federal Rule 4*, 96 F.R.D. 88 (1983).

As originally promulgated by the Supreme Court, Rule 4 allowed service by registered or certified mail, return receipt requested. *See Amendments to the Federal Rules of Civil Procedure*, 93 F.R.D. 255, 256–257 (1982). Congress postponed the effective date of the amendments, in part, over concern that the signature of receipt might not insure that the defendant had actual notice of the claims against him. Critics argued this was so because the signature might be illegible or might not match the defendant's name. *See* H.R. Rep. No. 662, 97th Cong., 2d Sess. 3 (1982) (accompanying H.R. 6663, a bill delaying the effective date of proposed amendments to Rule 4), *reprinted in* 2 *Moore's Federal Practice* ¶ 4.01 [33.–3].

Congress amended the rule to include the acknowlegment procedure. This procedure, it was hoped, would insure that no default judgment would be entered without proof of actual notice. If the acknowledgment is returned, service is complete. If it is not returned, other methods of service are employed. Either way, there is proof of actual notice.[5] From the language of

---

1. Plaintiff has completely failed to address this motion in its memorandum.

2. The affidavits actually state that process was received on or after October 7, 1984. This is obviously a typographical error.

3. It is undisputed that plaintiff has failed to effect personal service.

4. The defendants may not ignore the summons with impunity. Under Rule 4(c)(2)(D), the court may hold the defendants liable for the cost of procuring personal service unless they can show good cause for failing to timely return the acknowledgment.

5. A fair representation of congressional intent is contained in Representative Edward's statement introducing the bill on the House floor. Representative Edwards explained:

This system of mail service avoids the notice problems created by the registered and certified mail procedures proposed by the Supreme Court. If the proper person receives the notice and returns the acknowledgment,

the rule requiring additional service and its purpose of insuring proof of actual notice, it is abundantly clear that service under Rule 4(c)(2)(C)(ii) is not effective unless the acknowledgment is returned within 20 days of the initial mailing. *Norlock v. City of Garland*, 768 F.2d 654, 657 (5th Cir.1985); *Armco, Inc. v. Penrod-Stauffer Building Systems, Inc.*, 733 F.2d 1087, 1089 (4th Cir.1984); 2 *Moore's Federal Practice* ¶ 4.01 [33.-3]; Siegel, *Practice Commentary on Amendments to Federal Rule 4*, 96 F.R.D. at 95. *See also accord Jaffe v. Federal Reserve Bank of Chicago*, 100 F.R.D. 443, 444 (N.D.Ill.1983); *Billy v. Ashland Oil Co.*, 102 F.R.D. 230, 234 (W.D. Pa.1984).

The Second Circuit reached a different result in *Morse v. Elmira Country Club*, 752 F.2d 35 (2d Cir.1984), holding that service by mail under Rule 4(c)(2)(C)(ii) need not be acknowledged to be effective. The court was at pains, however, to tease this interpretation out of the rule's language. Its arguments, in fact, support the contrary position taken by this court.

The Second Circuit pointed out that, without the acknowledgment, the plaintiff cannot make proof of service as required by Rule 4(g). The court noted, however, that under Rule 4(g), failure to make proof of service does not affect its validity. Thus, the court reasoned, personal service is required when the acknowledgment is not returned merely to provide proof of service and is otherwise irrelevant. It is difficult to understand why the rule would require the expense of personal service merely to satisfy an irrelevant requirement. To the contrary, the requirement of Rule 4(g) that proof of service is made by filing of the acknowledgment highlights the fact that service by mail requires return of the acknowledgment.

The Second Circuit also found no indication that, when Congress amended the original version of the rule which allowed the plaintiff to obtain a default judgment by showing the defendant's refusal to accept mail delivery and a second mailing, it changed its view that mail service was effective upon receipt of actual notice. Yet, the additional requirement of personal service is a clear indication that the initial mailing, even if received, is insufficient unless it is timely acknowledged. Congress rejected the original version which allowed a default judgment based on the defendant's signature because of concern that such proof was unreliable. Yet, under the Second Circuit's reasoning, that signature is not even required. The Second Circuit allows that, under its view, a hearing is required to determine whether the defendant actually received the summons, but does not identify any evidence that Congress contemplated such a hearing. It is difficult to accept this strained interpretation in the face of plain language which calls for personal service in the absence of the acknowledgment's timely return.[6] Admittedly, the rule is overinclusive in this case, inasmuch as the defendants received

---

service is complete. If the proper person does not receive the mailed form, or *if the proper person receives the notice and fails to return the acknowledgment form, another method of service authorized by law is required.* In either instance, however, the defendant will receive actual notice of the claim. In order to encourage defendants to return the acknowledgment form, the court can order a defendant who does not return it to pay the costs of service unless the defendant can show good cause for the failure to return it.

128 Cong. Rec. H9850 (daily ed. December 15, 1982) (statement of Rep. Edwards) (footnote omitted) (emphasis added); *reprinted in Service Under Amended Rule 4*, 96 F.R.D. at 119.

6. The Second Circuit's arguments, though less than convincing, were intended to avoid an unjust result—the defendant's acquisition of a stat-

ute of limitations defense by its failure to return the acknowledgment. The court correctly noted that sanctions under Rule 4(c)(2)(D) are ineffectual when the defendant's delay allows it such a defense. This concern is only relevant in diversity actions where governing state law tolls the statute of limitations upon effective service. Where federal law governs, Rule 3 provides for commencement of the action upon the filing of the complaint. Where this problem does arise, the courts may rely on their equitable powers to deny the defendant a statute of limitations defense. Equity, it is said, will allow no man to benefit from his own wrong. Reliance on such an equitable principle, however, should not be masked by a strained interpretation of federal statutes. Finally, a plaintiff fearful of such a circumstance, need not effect service under Rule 4(c)(2)(C)(ii).

actual notice. Nevertheless, in most cases, the acknowledgment procedure is efficient and effective. Congress has carefully considered and drafted this rule, and the court must follow it.

Rule 4(j) requires the plaintiff to effect service within 120 days after it files the complaint. Plaintiff has not done so. The court may grant an extension for good cause. Ordinarily, the court would allow an extension, however, because its ruling on the motion to dismiss is adverse to plaintiff, none is required.

## II. *Motion to Dismiss*

 A clause in the promissory note reads as follows:

> This Note is delivered in the State of Michigan; the undersigned [Louis and George Eyde] agree that venue for any matter arising out of this Note shall be in Ingham County, Michigan and the terms of this Note shall in all respects be governed by and construed in accordance with the laws of the State of Michigan.

The defendants contend that Coldwell is bound by this clause to bring this action in Ingham County, Michigan.

Initially, the court must determine whether the choice of law clause is enforceable. As a district court sitting in Illinois, the court applies Illinois choice of law rules in diversity cases. *Klaxon v. Stentor Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Twohy v. First National Bank of Chicago*, 758 F.2d 1185, 1189 (7th Cir.1985). Illinois recognizes the enforceability of such clauses. *Twohy*, 758 F.2d at 1190. Thus, Michigan law determines the enforceability of the forum selection clause.

Under Michigan law, a promissory note is a contract. *Annis v. Pfeiffer*, 278 Mich. 692, 271 N.W. 568, 569 (1937). The payee may enforce the note in accordance with its terms. *See e.g. Collateral Liquidation, Inc. v. Renshaw*, 301 Mich. 437, 3 N.W.2d 834, 836 (1942). The plain terms of the note require that this action be brought in Michigan. In *The Bremen v. Zapata Off-Shore Oil Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court held

that forum selection clauses are *prima facie* binding and enforceable unless it is clearly shown to be "unreasonable and unjust, or ... invalid for such reasons as fraud or overreaching." *Id.* at 15, 92 S.Ct. at 1916. Coldwell has made no such showing. Moreover, this case has significant contacts with Michigan and its resolution will be determined under Michigan law. The court holds the forum selection clause is enforceable and requires dismissal of this action without prejudice.

## III. *Conclusion*

For the foregoing reasons, defendant's motion to quash and dismiss is granted, and plaintiff's complaint is dismissed.