993 F.2d 1535
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Donald L. ALLISON; NuSat, Incorporated, formerly known as
Eset, Incorporated, Plaintiffs-Appellees,
v.
ECO TECH/RAM-Q INDUSTRIES, INCORPORATED, Defendant-Appellant,
and
Lawrence P. GRADIN, Defendant.
Donald L. ALLISON; NuSat, Incorporated, formerly known as
Eset, Incorporated, Plaintiffs-Appellees,
v.
ECO TECH/RAM-Q INDUSTRIES, INCORPORATED, Defendant-Appellant,
and
Lawrence P. GRADIN, Defendant.
 Nos. 92-1056, 92-1126.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 4, 1993
Decided: May 26, 1993
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. Richard L. Williams, Senior District Judge. (CA-91-201-R)
 Isaac Scott Pickus, Richmond, Virginia, for Appellants.
 Charles Michael DeCamps, SANDS, ANDERSON, MARKS & MILLER, Richmond, Virginia, for Appellees.
 ON BRIEF: Stacy Poulterer Thompson, SANDS, ANDERSON, MARKS & MILLER, Richmond, Virginia; John Richard Horst, Caney, Kansas, for Appellees.
 Before WIDENER, MURNAGHAN, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 As defendant-appellant, Eco-Tech/RAM-Q Industries, Inc. ("Eco-Tech") herein appeals the decision of the United States District Court for the Eastern District of Virginia denying its motion for an extension of time in which to answer the complaint of the plaintiff, Donald L. Allison.[1] The district court instead granted Allison's motion for an entry of default judgment in his favor as to Count 1. Count 1 of the suit essentially alleged that Eco-Tech breached its employment agreement with Allison by wrongfully terminating him. (The court, however, granted the requested extension of time in which to answer Counts II and III, which were later dismissed with prejudice by stipulation of the parties.)
 
 
 2
 Resolving only the issue of damages, the jury returned a verdict for Allison in the amount of $120,000. After a proper motion by Eco-Tech, the district court reduced the award by $45,000 and ordered Allison to accept the remittitur to $75,000 or to retry the case. Allison accepted the reduced award "with reservations."
 
 
 3
 Eco-Tech, in addition to appealing the default judgment as to liability, also has appealed the damages award. It contends that there was insufficient evidence to support the monetary award in favor of Allison. In response, Allison has filed a cross-appeal, challenging the remittitur of the jury award by the district court.
 
 
 4
 We review the district court's refusal to extend the time in which to answer and its entry of a default judgment for an abuse of discretion. See, e.g., Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987) ("[A]lthough the decision whether to set aside a default judgment is one committed to the sound discretion of the district court ... 'an abuse of discretion in refusing to set aside a default judgment "need not be glaring to justify reversal." ' " (citations omitted) (quoting Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980) quoting Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 374 (D.C. Cir. 1980))). Under the law of the Fourth Circuit, default judgments are to be sparingly granted, with consideration to be given to, among other factors, the question of whether a less severe sanction would suffice. See e.g., id. at 953-54; United States v. Moradi, 673 F.2d 725, 727-28 (4th Cir. 1982).
 
 
 5
 The complaint was filed April 15, 1991. A lawyer acting for the defendant did not file an answer or other responsive pleading within 20 days of the acknowledgement of the summons and complaint. A motion on Eco-Tech's behalf to extend the time to plead was not made until July 12, 1991. Allison countered with a default judgment motion on July 15, 1991.
 
 
 6
 On August 9, 1991, the district court granted default judgment as to liability for Count I and granted an extension of time to answer Counts II and III. In reaching its decision, the district judge stated: "Defendants essentially argue that their attorney ... was derelict in failing to timely obtain local counsel.... While one school of thought holds that the client should not be punished for the errors of counsel, it seems the better position to make the client liable, and then entertain a subsequent action against the attorney at fault."
 
 
 7
 Having to try a case on an even playing field should be the objective in every case where both parties wish to litigate. All in all, excusable neglect and a less drastic sanction should have been considered in the instant case.[2] The failure of the lawyers (one New Jersey lawyer and ultimately one Virginia lawyer) to abide by the rules and respond in a timely manner has not been shown to have existed because of steps solely attributable to the client nor have such steps been shown to have been relied on by the district court. A possible malpractice suit against the lawyer does not, itself alone, justify a default judgment against a client, particularly when no prejudice to the other party has been shown. Compare Lolatchy, 816 F.2d at 953 (vacating a default judgment and noting several factors: "the defendant[s] are blameless. There has been no prejudice to the plaintiff. Any dilatory action was on the part of the attorney, not the defendants, it was not drawn out.... No sanctions short of default were attempted by the district court.") and Moradi, 673 F.2d at 728 (reversing default judgment because the movant bore no personal responsibility for the error leading to the default and because less severe sanctions were available) with Universal Film Exchanges, Inc. v. Lust, 479 F.2d 573, 577 (4th Cir. 1973) (affirming entry of summary judgment on the grounds that the attorney's failure to enter an appearance and contest the granting of summary judgment was "grossly negligent" and could not be deemed excusable neglect under Rule 60(b)(1); the court stated that the client's remedy against a negligent attorney was a suit for malpractice, but it did not address the issue of prejudice to the plaintiff.).
 
 
 8
 Primarily, and, as far as it appears from the record exclusively, the situation arose when a party from New Jersey turned over to a lawyer frequently used for business in that state the task of retaining a lawyer in Virginia. No great dereliction by Eco-Tech has been shown. A resulting delay of approximately two months transpired. The consequent disadvantages or inconveniences to Allison appear to have consisted of the loss of the default judgment, extended to include damages, and the necessity of having to start all over again. The loss of the default judgment itself is not cognizable prejudice. Further, if Allison should win on the merits of his claim, the inconvenience of having been required to retry the case at a later date can be readily remedied by an extended prejudgment interest award.
 
 
 9
 The extension of time to plead to Count I should have been granted and a less severe sanction considered. On reversing the court's denial of the requested extension, of course, we erase, for a probable new trial, the judgment of damages.[3]
 
 REVERSED AND REMANDED
 WILLIAMS, Circuit Judge, dissenting:
 
 10
 The cases cited by the majority opinion make clear that the entry of default is committed to the sound discretion of the district court. Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 954 (4th Cir. 1987); United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). Because I do not agree that the district court abused its discretion, I dissent.
 
 
 11
 Allison filed his complaint on April 15, 1991. Gradin, president of Ecotech, acknowledged receipt of the complaint on April 25, 1991. The notice accompanying the complaint clearly stated: "If you do complete and return this form, you ... must answer the complaint within 20 days of the date of your acknowledgement. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint." Under Federal Rule of Civil Procedure 12(a), Defendants should have filed a responsive pleading by May 15, 1991. Worrell v. B.F. Goodrich Co., 845 F.2d 840, 842 (9th Cir. 1988) (for service under Rule 4(c)(2)(C)(ii), twenty day response period under Rule 12(a) begins on the date the acknowledgement is signed), cert. denied, 491 U.S. 907 (1989). Defendants did not request additional time to respond until July 12, 1991, and did not file their answers until August 2, 1991.
 
 
 12
 At the August 5 hearing on Defendants' motion for an extension of time in which to file an answer, Defendants bore the burden of demonstrating excusable neglect for their failure to comply with the Rules of Civil Procedure. In re Four Seasons Sec. Laws Litig., 493 F.2d 1288, 1290 (10th Cir. 1974) (movant must show a reasonable basis for failure to comply with time requirements); Fed. R. Civ. P. 6(b)(2) (after time period has expired, party must show excusable neglect to obtain additional time); Fed. R. Civ. P. 55(c) (party may avoid entry of default for good cause). Essentially, Defendants' sole contention was that their delay should be excused because Gradin relied upon Mark Nelson, his counsel in New Jersey, to obtain counsel to represent them in Virginia.[1] The district court perceived this as an attempt to blame Nelson, and noted in its opinion that "Mr. Nelson was not present at the hearing in this matter, nor was an affidavit from Mr. Nelson submitted." At the hearing, the district court specifically commented on its inability to verify the Defendants' version of events without Nelson's testimony.
 
 
 13
 Gradin was not himself blameless. He admitted that he learned sometime in April that it was necessary to hire Virginia counsel. He further acknowledged that he was in touch with Defendants' current counsel, I. Scott Pickus, as early as the second week of May, but took no action to hire him until mid-June. Gradin did nothing to expedite a response, despite his personal knowledge of the expired deadline. Gradin did not discuss the case in detail with Pickus until the third week in June.
 
 
 14
 Based on these facts, the district court found that the Defendants had essentially failed to carry their burden of demonstrating excusable neglect. The court recognized the relative injustice of default judgments but also noted the importance of enforcing the time limits in the Rules of Civil Procedure. Because the Defendants appeared to present meritorious defenses on Counts II and III, the court declined to enter a complete default. Rather, the court imposed the less severe sanction of partial default: it entered default on one of the Plaintiff's claims, and permitted the Defendants to litigate both the merits of the remaining two claims and the damage award on the defaulted claim. The district court carefully tailored its decision to the facts of this case, and did not abuse its discretion.
 
 
 15
 Because the entry of default was within the discretion of the district court, I would affirm its judgment.[2]
 
 
 
 [1]
 The suit against Eco-Tech was originally brought by Allison and his corporation NuSat, Inc., formerly Eset Inc. NuSat, Inc. voluntarily dismissed its complaint against Eco-Tech prior to the trial on damages
 
 
 [2]
 Eco-Tech, when it did seek to answer, wished to present apparently meritorious defenses to all counts of the complaint. Although the district judge recognized Eco-Tech's defense that the applicable statute of limitations had expired with respect to Counts II and III, it refused to allow to go to trial Eco-Tech's defense concerning the merits of Allison's Count I claim. That the defense to Count I was not devoid of some substance has been evidenced by the required remittitur which followed the verdict rendered by the jury on Count I. Eco-Tech's dereliction in failing timely to obtain local counsel was identically shared for all three counts. Consequently, permitting an extension of time in which to answer Counts II and III while denying such extension for Count 1, although not a glaring error, appears to have raised a further question of whether, at most, that was a distinction without a difference. The Lolatchy test of what constituted an abuse of discretion was accordingly met
 
 
 [3]
 The eradication of the remitted judgment makes irrelevant the question of whether Allison properly could appeal the district court's remittitur order
 
 
 [1]
 In their motion for an extension of time, Defendants relied upon three grounds: (1) the complaint was complex and required time and effort to gather the information to respond, (2) Defendants lived in another jurisdiction, and (3) one of Defendants' two principals, Cedric Seglin, was married on May 18, 1991, and was unavailable for consultation. Understandably, Defendants have abandoned these other arguments. The complaint was not complicated; Gradin knew the details necessary to respond to the complaint; and Seglin's marriage took place after the deadline
 
 
 [2]
 Although the majority did not address the remaining issues on appeal, I would hold that substantial evidence supports the damage award. I would also note that, having accepted a remittitur order, Allison may not contest the damage award on appeal. Donovan v. Penn Shipping Co., 429 U.S. 648, 650 (1977) (per curiam)